1
2
3
4
5
6
7
8                          UNITED STATES DISTRICT COURT

9                          EASTERN DISTRICT OF CALIFORNIA

10

11    AARON D. SEYMOUR,                     Case No.: 1:22-cv-00989-JLT-CDB (PC)

12                  Plaintiff,              **FINDINGS AND RECOMMENDATIONS TO
                                            GRANT DEFENDANT'S MOTION FOR
13         v.                               SUMMARY JUDGMENT**

14    LEDBETTER,                            (Doc. 36)

15                  Defendant.              **14-DAY OBJECTION DEADLINE**

16

17         Plaintiff Aaron D. Seymour is proceeding pro se and *in forma pauperis* in this civil rights

18    action pursuant to 42 U.S.C. § 1983. This action proceeds on Plaintiff's First Amendment

19    retaliation claim and Eighth Amendment failure to protect claim against Defendant Ledbetter.

20         **I.      INTRODUCTION**

21         On November 25, 2024, Defendant timely filed a motion for summary judgment

22    challenging the merits of Plaintiff's claims. (Doc. 36.) Plaintiff opposed (Doc. 41) and Defendant

23    replied (Doc. 45).

24         **II.     APPLICABLE LEGAL STANDARDS**

25                   *Motions for Summary Judgment*

26         Summary judgment is appropriate when it is demonstrated that there "is no genuine

27    dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

28    Civ. P. 56(a). A party asserting that a fact cannot be disputed must support the assertion by

1    "citing to particular parts of materials in the record, including depositions, documents,

2    electronically stored information, affidavits or declarations, stipulations (including those made for

3    purposes of the motion only), admissions, interrogatory answers, or other materials...." Fed. R.

4    Civ. P. 56(c)(1)(A).

5         Summary judgment should be entered, after adequate time for discovery and upon motion,

6    against a party who fails to make a showing sufficient to establish the existence of an element

7    essential to that party's case, and on which that party will bear the burden of proof at trial. *See*

8    *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[A] complete failure of proof concerning an

9    essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.*

10    If the moving party meets its initial responsibility, the burden then shifts to the opposing party to

11    establish that a genuine issue as to any material fact actually does exist. *See Matsushita Elec.*

12    *Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986). In attempting to establish the

13    existence of this factual dispute, the opposing party may not rely upon the allegations or denials

14    of their pleadings but is required to tender evidence of specific facts in the form of affidavits,

15    and/or admissible discovery material, in support of its contention that the dispute exists or shows

16    that the materials cited by the movant do not establish the absence of a genuine dispute. *See* Fed.

17    R. Civ. P. 56(c); *Matsushita*, 475 U.S. at 586 n.11. The opposing party must demonstrate that the

18    fact in contention is material, i.e., a fact that might affect the outcome of the suit under the

19    governing law. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986); *T.W. Elec. Serv.,*

20    *Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). Further, the opposing

21    party must also demonstrate that the dispute is genuine, i.e., the evidence is such that a reasonable

22    jury could return a verdict for the nonmoving party. *See Wool v. Tandem Computers, Inc.*, 818

23    F.2d 1433, 1436 (9th Cir. 1987). In the endeavor to establish the existence of a factual dispute,

24    the opposing party need not establish a material issue of fact conclusively in its favor. It is

25    sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the

26    parties' differing versions of the truth at trial." *T.W. Elec. Serv*., 809 F.2d at 631. Thus, the

27    "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see

28    whether there is a genuine need for trial.'" *Matsushita*, 475 U.S. at 587 (quoting Fed. R. Civ. P.

1  56(e) advisory committee's note on 1963 amendments).

2      In resolving the summary judgment motion, the evidence of the opposing party is to be

3  believed. *See Anderson*, 477 U.S. at 255. All reasonable inferences that may be drawn from the

4  facts placed before the court must be drawn in favor of the opposing party. *See Matsushita*, 475

5  U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's

6  obligation to produce a factual predicate from which the inference may be drawn. *See Richards v.*

7  *Nielsen Freight Lines*, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th

8  Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

9  show that there is some metaphysical doubt as to the material facts.... Where the record taken as a

10  whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine

11  issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).

12              ***First Amendment: Retaliation***

13      Prisoners have a First Amendment right to file prison grievances and lawsuits and

14  retaliation against prisoners for exercising this right is a constitutional violation. *Rhodes v.*

15  *Robinson*, 408 F.3d 559, 566 (9th Cir. 2005).

16      A claim for First Amendment retaliation in the prison context requires: (1) that a state

17  actor took some adverse action against the plaintiff (2) because of (3) the plaintiff's protected

18  conduct, and that such action (4) chilled the plaintiff's exercise of his First Amendment rights,

19  and (5) "the action did not reasonably advance a legitimate correctional goal." *Id.* at 567-68.

20      To prove the second element, retaliatory motive, plaintiff must show that his protected

21  activities were a "substantial" or "motivating" factor behind the defendant's challenged conduct.

22  *Brodheim v. Cry*, 584 F.3d 1262, 1269, 1271 (9th Cir. 2009). Plaintiff must provide direct or

23  circumstantial evidence of defendant's alleged retaliatory motive; mere speculation is not

24  sufficient. *See McCollum v. CDCR*, 647 F.3d 870, 882-83 (9th Cir. 2011); accord, *Wood v. Yordy*,

25  753 F.3d 899, 905 (9th Cir. 2014). In addition to demonstrating defendant's knowledge of

26  plaintiff's protected conduct, circumstantial evidence of motive may include: (1) proximity in

27  time between the protected conduct and the alleged retaliation; (2) defendant's expressed

28  opposition to the protected conduct; and (3) other evidence showing that defendant's reasons for

1    the challenged action were false or pretextual. *McCollum*, 647 F.3d at 882.

2                    ***Eighth Amendment: Failure to Protect***

3        Prison officials have a duty "to take reasonable measures to guarantee the safety of

4    inmates, which has been interpreted to include a duty to protect prisoners." *Labatad v.*

5    *Corrections Corp. of America,* 714 F.3d 1155, 1160 (9th Cir. 2013) (citing *Farmer v. Brennan*,

6    511 U.S. 825, 832-33 (1994) & *Hearns v. Terhune*, 413 F.3d 1036, 1040 (9th Cir. 2005)). To

7    establish a violation of this duty, a prisoner must "show that the officials acted with deliberate

8    indifference to threat of serious harm or injury to an inmate." *Id.* (citing *Gibson v. Cnty. of*

9    *Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002)).

10       A failure to protect claim under the Eighth Amendment requires a showing that "the

11   official [knew] of and disregard[ed] an excessive risk to inmate ... safety." *Farmer*, 511 U.S. at

12   837. "Whether a prison official had the requisite knowledge of a substantial risk is a question of

13   fact subject to demonstration in the usual ways, including inference from circumstantial

14   evidence, ... and a factfinder may conclude that a prison official knew of a substantial risk from

15   the very fact that the risk was obvious." *Id.* at 842 (citations omitted). The duty to protect a

16   prisoner from serious harm requires that prison officials take reasonable measures to guarantee

17   the safety and well-being of the prisoner. *Id*. at 832-33; *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th

18   Cir. 1998). As "only the unnecessary and wanton infliction of pain implicates the Eighth

19   Amendment," plaintiff must allege facts showing the defendant acted with a "sufficiently

20   culpable state of mind." *Wilson v. Seiter*, 501 U.S. 294, 297 (1991) (internal quotations marks,

21   emphasis, and citations omitted).

22       To state a claim, the Eighth Amendment requires allegations sufficient to plausibly show

23   that prison officials were deliberately indifferent to a substantial risk of harm or safety. *Farmer*,

24   511 U.S. at 847. The objective component of an Eighth Amendment requires that a prisoner show

25   he was deprived of something "sufficiently serious." *Foster v. Runnels*, 554 F.3d 807, 812 (9th

26   Cir. 2009) (quoting *Farmer*, 511 U.S. at 834. The state of mind requirement under the subjective

27   component of the Eighth Amendment standard has been defined as "deliberate indifference" to an

28   inmate's health or safety. *Farmer*, 511 U.S. at 834. Under the "deliberate indifference" standard,

a prison official cannot be found liable for denying an inmate humane conditions of confinement

unless the official knows of and disregards an excessive risk to inmate health or safety. *Id.* at 837.

### III.    PLAINTIFF'S COMPLAINT

#### <u>Claim One</u>

##### *The Facts Alleged*

Plaintiff contends that on February 10, 2022, during a rules violation hearing conducted by Defendant Ledbetter, Plaintiff informed Ledbetter he intended to pursue judicial review of Ledbetter's biased ruling. (Doc. 1 at 4.) Plaintiff shared a court document to show Ledbetter "how this happened before" and advised Ledbetter he had "an open civil suit on his constituents about the carcinogenic water" at Wasco State Prison, identifying Ledbetter, "H. Shirley, I. Cronjager & S. Degough" as administrators. (*Id.*) Plaintiff contends Ledbetter scoffed and stated nothing would come of the suit. (*Id.*) Plaintiff walked away, but Ledbetter called him back. (*Id.*) Plaintiff contends Ledbetter also then called Plaintiff's "witness to the rules violation hearing, which was already over" despite Plaintiff stating he did not need a witness because the hearing had concluded. (*Id.*) Plaintiff's witness, Markeith Davis, was present when Ledbetter "told another inmate in front of other race inmates" and a correctional officer that Plaintiff was "a jail house snitch" and that Davis "had numerous contraband cellphones for sale & was operating an illegal business." (*Id.*) Plaintiff asserts Ledbetter's comments put his life at risk "in clear retaliation" for Plaintiff filing suit against Ledbetter's "constituents." (*Id.*) Plaintiff contends inmates approached him afterwards and made threatening gestures and sent a threatening letter. (*Id.*) Plaintiff states he "documented all of this w/the prison litigation." (*Id.*) Plaintiff alleges "[f]uture injury is a big possibility as the target [Ledbetter] put on [his] back is real." (*Id.*) Plaintiff contends he suffered physical ailments "from the poison water," that Ledbetter "is impeding" on his ability to get a remedy, and he has suffered "emotional stress fear of pertinant [sic] danger." (*Id.*)

[¶]-[¶]

#### <u>Claim Two</u>

##### *The Facts Alleged*

Plaintiff contends that Defendant Ledbetter's identifying him as a snitch threatens his safety. (Doc. 1 at 5.) Plaintiff asserts Ledbetter's "20 plus years" experience indicates Ledbetter "knows that to get an inmate hurt, stabbed & killed you use tactics labeling him a snitch or a child molester or a rapist." (*Id.*) Plaintiff contends Ledbetter used this "dirty trick" to "erase [his] existence because of the civil suit." (*Id.*) Plaintiff asserts Ledbetter "conspired within that split second to galvanize the rowdy inmate's violent gang behavior in a plot to have [him] killed." (*Id.*) Plaintiff contends the inmates that approached him made it clear that Ledbetter had advised them

of Plaintiff's "snitching." (*Id.*) Plaintiff asserts he knows Ledbetter meant what he said "as his words wreaked of venom & vengeance, his facial expression was of a tight grimace & his face & ears turned a turnip red," indicating anger. (*Id.*) Plaintiff contends that anger is a sign of Ledbetter's intent to have him attacked and that the inmates "acted out on his words & lies" concerning Plaintiff. (*Id.*) Plaintiff asserts Ledbetter's actions are "a clear violation, as these types of allegations are long lasting within the Prison community & danger still & forever will loom." (*Id.*) Plaintiff's injuries include emotional trauma and stress and inmates grabbing his arms aggressively and interrogating him fiercely. (*Id.*)

(*See* Doc. 13 at 3-4, 5.)

## IV.    DEFENDANT'S STATEMENT OF UNDISPUTED FACTS

1. Plaintiff Aaron Seymour (BN7172) is a state prisoner currently housed at the California Rehabilitation Center. (ECF No. 20.)

2. Defendant Ledbetter is a retired Correctional Lieutenant formerly employed by the California Department of Corrections and Rehabilitation (CDCR), who worked at Wasco State Prison at the time of the alleged events. (Decl. of G. Ledbetter at ¶¶ 1 & 2.)

3. On January 29, 2022, officers came to help move Plaintiff to his newly assigned cell. When they advised Plaintiff that he was being rehoused, Plaintiff responded that he was not going. The officers then informed Plaintiff that he would receive a 115, or Rule Violation Report (RVR) for failing to comply with the order to accept his new housing assignment. (Decl. of G. Ledbetter at ¶ 8; ex. C.)

4. Plaintiff replied that he did not care if they wrote him up. Consequently, officers issued Plaintiff a RVR for refusing to accept his new assigned housing. Specifically, on January 29, 2022, Plaintiff received a Rules Violation Report (RVR) (log number 7156619) for violating rule 3005(c): "Refusing to Accept Assigned Housing-Delaying a PO." (Decl. of Ledbetter at ¶ 8; ex. C.)

5. The disciplinary hearing for Plaintiff's RVR log number 7156619 was scheduled for February 10, 2022. (Exs. C & D.)

6. On February 10, 2022 a disciplinary hearing was held in building 3A at the correctional officer's podium. Defendant Correctional Lieutenant Ledbetter conducted

6

the disciplinary hearing. The disciplinary hearing for Plaintiff's RVR log number 7155619 was one of many disciplinary hearings that Defendant Ledbetter conducted that day. (Decl. of G. Ledbetter at ¶ 9.)

7.  Defendant called Plaintiff's RVR number and Plaintiff proceeded to the table where Defendant was conducting the hearing. (Decl. of G. Ledbetter at ¶ 9.)

8.  Defendant then confirmed the identity of Plaintiff and the RVR log number. Defendant reviewed the allegations and evidence against Plaintiff in his RVR log number 7155619. Defendant then gave Plaintiff an opportunity to present his case and provide any evidence that he had in support of his side. (Decl. of G. Ledbetter at ¶ 9.)

9.  Plaintiff admitted that he refused the order to be rehoused in his new building. Plaintiff explained that he did not want to be moved because he was concerned that he would contract COVID-19. (Decl. of G. Ledbetter at ¶ 10.)

10. Defendant informed Plaintiff that unfortunately this was insufficient evidence to dispute the fact that he disobeyed the order to accept new housing. (Decl. of G. Ledbetter at ¶ 10.)

11. Plaintiff originally had a witness listed for the disciplinary hearing, but, upon hearing Defendant's analysis, decided that he no longer wanted a witness. (Decl. of G. Ledbetter at ¶ 12.)

12. Defendant called Plaintiff's witness, inmate Markeith Davis, to the hearing anyways to hear what he had to say about the underlying facts of the RVR. Davis did not know prior to the hearing that he would be a witness for Plaintiff. (Decl. of G. Ledbetter at ¶ 13; ex. E, Depo of Davis at pp. 13:20-22.)

13. Once Mr. Davis reached the podium, Defendant made a joke to break the ice. (Decl. of G. Ledbetter at ¶¶ 13 & 14.)

14. Mr. Davis understood Defendant's comment as a joke. (Decl. of Ledbetter at ¶ 14; ex. E, Depo. of Davis at pp. 13:20-14:18 & 17:7-17:10.)

15. Plaintiff did not intervene or say anything to Defendant after Defendant made the joke. (Decl. of G. Ledbetter at ¶ 14.)

7

16. Defendant told Mr. Davis that he was joking. (Decl. of G. Ledbetter at ¶ 14.)

17. Defendant then reviewed the disciplinary hearing information with Mr. Davis, explaining why he was there and that he had some questions to ask him. Defendant asked Mr. Davis two questions. (Decl. of Ledbetter at ¶ 14; ex. D; ex. E, Depo of Davis, pp. 14:18-16:5.)

18. Neither of Mr. Davis's answers disproved the fact that Plaintiff has refused to comply with the order to accept new housing. Mr. Davis's responses only reiterated Plaintiff's concerns about COVID-19. Plaintiff did not have any further questions for Mr. Davis, so Mr. Davis was dismissed from the hearing. (Decl. of Ledbetter at ¶ 14; ex. D; see ex E, Depo of Davis at pp. 14:18-16:5)

19. Defendant then reviewed all of the evidence and found Plaintiff guilty of the underlying charge because Plaintiff admitted that he refused to accept his new housing.

20. This disciplinary hearing was the first and only time that Defendant and Plaintiff met or encountered each other. (Decl. of Ledbetter at ¶¶ 15 & 16.)

21. [After the disciplinary hearing, on] February 11, 2022, Plaintiff submitted a 602-1 grievance, log number 223011. (Decl. of B. Adamak at ¶ 4; ex. A)

22. In this grievance, Plaintiff states that he received "dirty looks" and a "non-life threatening letter." But, Plaintiff also states that he knew he was "OK" and that the inmate population was on his side. (Decl. of B. Adamak at ¶ 4; Ex. A.)

23. The same day, Plaintiff's grievance was sent to Correctional Lieutenant B. Adamak for review. Lieutenant Adamak reviewed Plaintiff grievance log number 223011 and determined per policy that it suggested a possible safety concern. Lieutenant Adamak then immediately pulled Plaintiff into an interview to review the grievance and discuss the allegations to determine if there were any actual safety concerns. Plaintiff met with Correctional Lieutenant B. Adamak to discuss Plaintiff's 602 grievance log number 223011. (Decl. of B. Adamak at ¶¶ 4 & 5.)

24. Even though Plaintiff stated in his grievance that he knew he was "OK," this interview

8

1  was scheduled per policy because the grievance suggested that he may have a possible

2  safety concern. (Decl. of B. Adamak at ¶ 4.)

3  25. In this interview, Plaintiff told Correctional Lieutenant Adamak that he did not have

4  any safety concerns and in fact that there were "never any safety or enemy concerns."

5  (Decl. of B. Adamak at ¶ 5.)

6  26. Lieutenant Adamak prepared a CDC-128B chrono that summarized his meeting with

7  Plaintiff. Plaintiff reviewed and signed this CDC-128B chrono. (Decl. of B. Adamak

8  at ¶ 6; Ex. B.)

9  27. Defendant did not have knowledge of any enemy or safety concerns that Plaintiff had,

10  or did not have, because of the February 10, 2022 disciplinary hearing. Defendant was

11  not aware of anything that could have placed Plaintiff's life in danger. (Decl. of

12  Ledbetter at ¶¶ 16 & 17.)

13  28. Defendant did not believe that his joke or any statement [] made at the February 22,

14  2022 hearing did or would place Plaintiff in danger or create a substantial risk of harm

15  to Plaintiff. (Decl. of G. Ledbetter at ¶¶ 17 & 18.)

16  29. In Defendant's experience, there was often tension when an inmate was called as a

17  witness in a disciplinary hearing. This tension could hinder the hearing environment

18  and harm the administration of justice. In his experience, telling a joke would break

19  the tension and encourage the inmate witness's participation in the hearing and

20  providing truthful answers. (Decl. of G. Ledbetter at ¶¶ 5 & 18.)

21  30. Plaintiff never informed Defendant that he had any enemy or safety concerns. (Decl.

22  of G. Ledbetter at ¶¶ 16 & 17.)

23  31. At no point did Plaintiff update his enemy concerns or seek protection from inmates

24  because of the alleged incident on February 10, 2022. (Decl. of B. Adamak at ¶ 9.)

25  32. There is no indication of an ongoing safety or enemy concerns in Plaintiff's custodial

26  record related to any statement made by Defendant Ledbetter at the February 10, 2022

27  disciplinary hearing. (Decl. of B. Adamak at ¶¶ 7-9.)

28  33. Aside from this case, Defendant is unaware of any case that Plaintiff has litigated or is

1    currently litigating. Aside from this case, Defendant has not been, and is not, a party to

2    any case where Plaintiff is also a party. (Decl. of G. Ledbetter at ¶ 20.)

3    (Doc. 36-3 [hereafter "UDF"].)

4    **V.    SUMMARY OF THE PARTIES' BRIEFING**

5    ***Defendant's Motion for Summary Judgment (Doc. 36)***

6    Defendant asserts Plaintiff cannot show retaliation and that his allegation that Defendant

7    made comments to Plaintiff's witness during the disciplinary hearing because Plaintiff filed

8    another lawsuit is unsupported. Defendant is not a party to Plaintiff's other lawsuit and has

9    nothing to gain or lose from that lawsuit. Further, Defendant contends he and Plaintiff had never

10    met prior to the disciplinary hearing. He maintains Plaintiff's assertion is nothing more than mere

11    speculation that fails to create a genuine dispute of fact. Moreover, Defendant argues there are no

12    allegations and no evidence to suggest that the officers who imposed the RVR knew about

13    Plaintiff's other lawsuit or that Defendant knew anything about the lawsuit until Plaintiff

14    allegedly raised the issue at the hearing.

15    Next, Defendant contends his actions had a legitimate correctional purpose, meaning

16    Plaintiff cannot meet the last element required for a retaliation claim. Specifically, Defendant

17    maintains he was "enforcing prison discipline when he found Plaintiff guilty of refusing a

18    housing assignment," that the evidence supported the charge, and that Plaintiff admitted to

19    refusing to move to another cell. Further, engaging in "a joking manner" with Plaintiff's witness

20    was "done in the furtherance of a legitimate correctional goal of encouraging a full review of the

21    evidence and witnesses to testify openly." The witness "thought of [Defendant's comment] as a

22    joke" and answered the questions posed of him. Defendant argues that "[u]nder the backdrop of

23    potentially dangerous, uncooperative, and disruptive interactions with witnesses, and given

24    Plaintiff's frustration with the state of his disciplinary charge, Defendant's actions served the

25    legitimate correctional goal of balancing institutional safety and order with the need for due

26    process and fairness at disciplinary hearings" because he "sought to increase the quality of the

27    witness's participation by breaking any tension and encouraging candid responses."

28

10

1    Next, Defendant maintains that Plaintiff cannot satisfy either the objective or subject

2 prongs of the *Farmer* test to prove Defendant was deliberately indifferent to a substantial risk of

3 serious harm to Plaintiff. Defendant did not call Plaintiff a snitch during the disciplinary hearing;

4 rather, Defendant made a joke to Plaintiff's witness. Even accepting the allegation that Defendant

5 called Plaintiff a snitch as true, Plaintiff does not allege, and there is no evidence to indicate, that

6 Plaintiff was attacked by other inmates because of Defendant's joke. Therefore, there is no harm

7 to Plaintiff. Further, Defendant contends the evidence reveals that Plaintiff's witness took

8 Defendant's comment as a joke, noting "that Defendant used the comment as a joke to break the

9 ice." And after the comment was made, the witness stayed and answered the questions posed,

10 showing that "Plaintiff was certainly not at risk of harm" from the witness who, had the comment

11 not been made in jest, otherwise "should have been most upset about" it. Defendant argues it is

12 significant that "Plaintiff ultimately did not believe that the joke posed any danger to him" as

13 established by Plaintiff's grievance submitted shortly thereafter. The grievance states Plaintiff

14 "received 'dirty looks' and a 'non-threatening letter,'" and then states that he knew 'the inmate

15 population [was] on [his] side' and that he was 'OK.'" Defendant asserts the "tone of Plaintiff's

16 grievance clearly suggests that there was no risk of harm, let alone a substantial risk, because of

17 the disciplinary hearing." In any event, during an interview with a correctional lieutenant

18 regarding that grievance, Plaintiff confirmed he was in no danger and had no enemy or safety

19 concerns. Defendant argues it "would be incongruent to hold that a substantial risk of harm

20 existed when Plaintiff, the person bringing this lawsuit, did not himself believe that any such risk

21 existed." Moreover, Defendant contends he had no knowledge of any facts or information to

22 suggest Plaintiff had enemy or safety concerns, his comment to Plaintiff's witness at the

23 disciplinary hearing was understood to be a joke, and nothing occurred at that proceeding to

24 indicate Defendant's joke "raised a substantial risk of harm to Plaintiff." And Defendant had no

25 knowledge of Plaintiff's grievance nor any knowledge that Plaintiff was interviewed about safety

26 concerns.

27    Further, Defendant contends the evidence and Plaintiff's conduct establishes there are no

28 objective facts indicating Defendant knew Plaintiff was at risk of harm. Plaintiff did not update

1    his enemy or safety concerns after the disciplinary hearing, was never attacked because of

2    anything occurring at the disciplinary hearing, there is no record of any ongoing safety concerns

3    in Plaintiff's custodial record, and at no point did Plaintiff or anyone else communicate such

4    enemy or safety concerns to Defendant. Defendant maintains Plaintiff's behavior and belief that

5    he was not at risk establishes that Defendant could not have known about any safety concerns or

6    substantial risk of harm to Plaintiff. Defendant could not, and did not, draw any inference as to

7    any risk to Plaintiff's health or safety because there was in fact no risk.

8          Defendant argues that, at most, "Plaintiff has expressed a speculative and generalized fear

9    of harm" because "'[d]irty looks' and a 'non-life threatening letter from an unknown source' are

10   simply insufficient to state an Eighth Amendment claim." Plaintiff was never attacked,

11   acknowledged he was not at risk of harm, had multiple opportunities to express any safety

12   concerns, and behaved in a manner "consistent with his admissions that there was no risk."

13   Defendant contends he is entitled to summary judgment because he "could not have been

14   deliberately indifferent to a risk that Plaintiff himself admits did not exist."

15         Finally, Defendant asserts he is entitled to qualified immunity because he did not violate

16   Plaintiff's rights. He maintains Plaintiff has failed to show Defendant retaliated again him or was

17   deliberately indifferent to Plaintiff's safety. And even were the Court to determine Defendant

18   violated Plaintiff's First and Eighth Amendment rights, Defendant maintains it would not have

19   been clear to every reasonable prison official in the same circumstances — making a joke to

20   break the tension between Plaintiff and his witness and to encourage open and full testimony at

21   the disciplinary hearing — that such conduct was unlawful. Defendant contends *Valandingham v.*

22   *Borjorquez*, 866 F.2d 1135, 1139 (9th Cir. 1989) is distinguishable; Defendant did not call

23   Plaintiff a snitch, and even assuming that allegation is true, Plaintiff did not respond to

24   Defendant's alleged implication that Plaintiff was an informant. Further, Defendant asserts "the

25   only actual named witness understood Defendant's alleged comment to be a joke and meant to

26   break any tension at the hearing." Moreover, the "unique safety and security concerns" at a

27   disciplinary hearing make it "important to break through that tension in order to encourage full

28   testimony and an exploration of all evidence." The law is "not so clear that a joke that allegedly

12

1    implied that Plaintiff had informed on his witness would place Plaintiff in harm's way when his

2    witness was also present and understood this comment as a joke and meant to break the tension."

3                   ***Plaintiff's Opposition to Defendant's Summary Judgment Motion***

4           The undersigned quotes the entirety of Plaintiff's opposition:

5                 In regards to the defendants motion of summary judgement. Plaintiff
                  asserts that the defendant is being sued in his/her individual capacity
6                 & therefore the defendant should not be protected under the C.D.C.R.
                  blanket of entitled immunity. Also, since the defendant is now retired
7                 which was done in the middle of the civil suit filed against this, which
                  appears to be yet another slippery move by the defendant to avoid
8                 accountability, & to protect his retirement Pension/benefits. The
                  defendant has spent numerous years administering the exact steps of
9                 disciplinarian oversight & punishment(s) that he is now up against.
                  Who would know better than the defendant, how to manipulate the
10                process of litigation.

11                The defendant was a high officer & knows the danger's of joke's in
                  prison. In fact a major rule of the C.D.C.R is "No Horseplay, Nor
12                Horsetalk," as these things can create a dangerous environment. And,
                  this is exactly what the defendant's tasteless joke did.
13

14   (Doc. 41 at 1-2.)

15                   ***Defendant's Reply to Plaintiff's Opposition (Doc. 45)***

16          Defendant contends Plaintiff's opposition fails to meaningful refute his summary

17   judgment motion and fails to present any disputed facts or evidence in support. Rather, Plaintiff

18   offers "a few short conclusory statements based on speculative harm and his opinion that

19   Defendant's conduct was improper." More particularly, Defendant argues there is no evidence to

20   suggest his joke was made in retaliation for a lawsuit Plaintiff filed, that Defendant was even

21   aware of the lawsuit, or that Defendant had a retaliatory motive. Defendant contends the

22   undisputed evidence shows he made a joke to "break the tension" during Plaintiff's disciplinary

23   hearing to encourage the witness to testify truthfully and openly. Defendant maintains that mere

24   conclusory speculation that Defendant's conduct was retaliatory is insufficient to create a factual

25   dispute and that he is entitled to summary judgment on Plaintiff's retaliation claim.

26          Next, Defendant argues Plaintiff's opposition "does not point to any facts that suggest

27   there was a substantial risk of serious harm" to Plaintiff because of Defendant's conduct.

28   Defendant contends the undisputed facts demonstrate just the opposite. Defendant never called

                                                  13

Plaintiff a snitch and Plaintiff's witness understood Defendant's comment to be a joke, and Defendant stated his comment was a joke. Defendant maintains Plaintiff was never attacked because of any joke Defendant made, and Plaintiff admitted he never had any safety concerns. Therefore, Defendant contends Plaintiff fails to satisfy the objective prong of the deliberate indifference test.

Further, Defendant contends there is no evidence he was deliberately indifferent to Plaintiff's safety. He maintains he was unaware that his comment during the disciplinary hearing would put Plaintiff or anyone else at substantial risk of serious harm or that it did result in serious harm. Defendant states he did not call Plaintiff a snitch and any joke told was intended to "help with the disciplinary process and ensure the full truthful testimony of Plaintiff's witness." Defendant contends Plaintiff's witness understood his comment was a joke and agreed to participate as a witness. Further, Defendant argues Plaintiff never actually felt threatened, nor did Plaintiff say anything to Defendant about "the joke or update his safety concerns despite having ample opportunity."

Defendant maintains that Plaintiff's argument that Defendant "knew of the 'dangers of jokes' because he was a 'high officer' broadly, and incorrectly, assumes that any jokes made in prison would create conditions that pose a substantial risk of serious harm to inmates." Further, Defendant asserts that while obviousness can establish knowledge of risk, "Plaintiff's own admission shows there was no risk and it was not so obvious." He contends he "could not have been deliberately indifferent to a risk that Plaintiff himself admits did not exist." Defendant argues he is entitled to summary judgment on Plaintiff's failure to protect claim.

Lastly, Defendant argues that Plaintiff conflates Eleventh Amendment official capacity immunity with qualified immunity, and clarifies he is moving for summary judgment based on qualified immunity as set forth in his motion.

## VI.    EVIDENTIARY MATTERS

Plaintiff has failed to properly respond to Defendant's Statement of Undisputed Facts in support of the motion for summary judgment. Plaintiff was served with a *Rand* warning that included the following language:

1

2

3

4

5

6

7

8

> In accordance with Local Rule 260(a), Defendant has filed a Statement of Undisputed Facts that contains discrete, specific material facts to support their entitlement to summary judgment. In response to this Statement, Local Rule 260(b) requires you to "reproduce the itemized facts in the Statement of Undisputed Facts and admit those facts that are undisputed and deny those that are disputed, including with each denial a citation to the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission, or other document relied upon in support of that denial." You may also "file a concise Statement of Disputed Facts, and the source thereof in the record, of all additional material facts as to which there is a genuine issue precluding summary judgment or adjudication." *Id*. You are responsible for filing all evidentiary documents cited in the opposing papers. *Id*.

9   (Doc. 36-3 at 3.) Plaintiff neither reproduced Defendant's itemized facts, nor admitted or denied

10  those facts. Because Plaintiff has not complied with Rule 260(b), the Court deems Plaintiff to

11  have admitted those facts. *See, e.g.*, *Beard v. Banks*, 548 U.S. 521, 527 (2006) ("by failing

12  specifically to challenge the facts identified in the defendant's statement of undisputed facts,

13  [plaintiff] is deemed to have admitted the validity of the facts contained in the [defendant's]

14  statement."); *Brito v. Barr*, No. 2:18-cv-00097-KJM-DB, 2020 WL 4003824, at *6 (E.D. Cal.

15  July 15, 2020) (deeming defendant's undisputed facts as admitted after plaintiff failed to comply

16  with Local Rule 260(b)); *see also Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

17  Nevertheless, where Plaintiff's verified complaint or evidence submitted in support of his

18  opposition to Defendant's motion for summary judgment bring Defendant's proffered facts into

19  dispute, the Court considered the complaint and any such evidence. *Jones*, at 923 (the court

20  considers as evidence those parts of the verified complaint based on plaintiff's personal

21  knowledge).

22      **VII.   DISCUSSION**

23          ***A.  Defendant is Entitled to Summary Judgment on Plaintiff's Retaliation Claim***

24              <u>No Retaliation Because of Protected Conduct</u>

25      As noted above, to prove a retaliation claim, in relevant part, Plaintiff must show

26  Defendant Ledbetter made his comments to Plaintiff's witness Davis at the disciplinary hearing

27  "because of" Plaintiff's "protected conduct" – here, the filing an earlier lawsuit. *Rhodes*, 408 F.3d

28  at 567-68. Defendant contends the evidence establishes that at the disciplinary hearing Defendant

1  reviewed the charges with Plaintiff, gave him a chance to present his case, and heard from

2  Plaintiff's witness. UDF 8. Defendant's evidence also establishes that Plaintiff was unable to

3  show he was innocent of the RVR and that Plaintiff admitted to refusing a housing assignment

4  requiring he move to another cell. UDF 9-10, 19. When Defendant called Plaintiff's witness

5  Markeith Davis to testify at the disciplinary hearing, Defendant made a joke to break the ice as it

6  is Defendant's experience that tension can hinder disciplinary proceedings and harm the

7  administration of justice. UDF 13-16, 28-29. Defendant's evidence also establishes that

8  Defendant has never been a party to any other lawsuit filed by Plaintiff. UDF 33.

9      Defendant has met his initial burden to show he did not retaliate against Plaintiff because

10  Plaintiff filed a lawsuit involving other Wasco State Prison personnel concerning the prison's

11  contaminated water. Thus, the burden of production shifts to Plaintiff to establish that a genuine

12  issue as to any material fact does exist. *Matsushita*, 475 U.S. at 586.

13      First, in his complaint in this action, Plaintiff alleges he "showed" Defendant "a court

14  document" concerning "the carcinogenic water that [Plaintiff and other inmates] drink at Wasco

15  State Prison administered by him, H. Shirley, J. Cronjager & S. Degough." (*See* Doc. 1 at 4.) The

16  Court takes judicial notice of the dockets for two other actions filed in this Court. *Harris v. Cnty.*

17  *of Orange*, 682 F.3d 1126, 1131–32 (9th Cir. 2012) (court may take judicial notice of "documents

18  on file in federal or state courts"). In *Seymour v. Wasco State Prison Administration,* case number

19  1:21-cv-01485-AWI-EPG, Defendant Ledbetter was not named as a defendant. And, when that

20  action was dismissed in July 2022 for Plaintiff's failure to exhaust administrative remedies, and

21  Plaintiff filed the action titled *Seymour v. Shirley*, case number 1:22-cv-00938-JLT-EPG, on July

22  29, 2022, he named three individuals: H. Shirley, J. Cronjager, and Scott Degough. Thus, to the

23  extent Plaintiff argues Defendant had previous notice of any action filed against Defendant by

24  Plaintiff, the evidence establishes otherwise.

25      Next, Plaintiff testified at his deposition that before the hearing began, Plaintiff asked

26  Defendant to "give [him] a fair hearing to and listen …." (Deposition of Seymour, at 29:13-15.)

27  Plaintiff testified he told Defendant about his other lawsuit to advise Defendant that Plaintiff was

28  "the type that's going to hold [Defendant] accountable." (*Id*. at 29:15-20.) Plaintiff testified he

1    told Defendant that the water at Wasco State Prison was "bad," that he was "suing some of [his]

2    constituents" as a result, and that Plaintiff hoped Defendant "would do [the] hearing correct"

3    because if not, Plaintiff would "seek legal action against" him. (*Id*. at 30:1-5.) Nevertheless,

4    shortly after explaining the circumstances surrounding the RVR and indicating that he "didn't

5    accept the violation," but "accepted the write-up for my reason of not going to the building,"[1]

6    Plaintiff also testified that he thought he "would be able to reason with Lieutenant Ledbetter as a

7    human being and safety of why I did not go," but instead Defendant told Plaintiff that "his hands

8    were tied and there was nothing he could do." (*Id*. at 33:7-11.) Plaintiff testified Defendant's

9    "decision was already predetermined before he came to the hearing, from what he just told me."

10   (*Id*. at 33:11-13; *see also id*. at 36-37.)

11        Assuming the outcome of the RVR was "predetermined" as Plaintiff testified, then any

12   predetermination to find Plaintiff guilty occurred before Defendant learned about Plaintiff's other

13   lawsuit. Aside from the foregoing, Plaintiff offered no testimony that would establish Defendant's

14   comment to inmate witness Davis was made by Defendant in retaliation for having learned

15   Plaintiff filed a lawsuit against other Wasco officials concerning the institution's water. (*See*

16   *generally*, Deposition of Seymour, at 1-59.) Therefore, Plaintiff offers nothing more than mere

17   speculation of a retaliatory motive. *See Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc*., 637

18   F.3d 1047, 1061 (9th Cir. 2011) ("To survive summary judgment, a plaintiff must set forth non-

19   speculative evidence of specific facts, not sweeping conclusory allegations); *Soremekun v. Thrifty*

20   *Payless, Inc*., 509 F.3d 978, 984 (9th Cir. 2007) (a party may not rely on speculative or

21   conclusory testimony contained within affidavits, pleadings, or moving papers to raise a genuine

22   dispute of material fact in an effort to defeat summary judgment); *Nelson v. Pima Community*

23   *College*, 83 F.3d 1075, 1081-82 (9th Cir. 1996) ("mere allegation and speculation do not create a

24   factual dispute for purposes of summary judgment"); *see also Brodheim*, 584 F.3d at 1271;

25   *McCollum*, 647 F.3d 882-83l; *Wood*, 753 F.3d at 905.

26   ///

27

28   _____
     [1] Plaintiff testified he refused the move to Building 1 (from Building 3) because he feared "contracting COVID and
     dying again." (Deposition of Seymour, at 32.)

17

Reasonably Advanced a Legitimate Correctional Goal

The fifth required element of a First Amendment retaliation claim requires a plaintiff to establish that "the action did not reasonably advance a legitimate correctional goal." *Rhodes*, 408 F.3d at 567-68.

Here, Defendant has met his initial burden of showing Plaintiff cannot meet this requirement. Specifically, Defendant's evidence establishes that he conducted a disciplinary hearing concerning Plaintiff's RVR on February 10, 2022, reviewing the allegations made and evidence against Plaintiff during the hearing, and allowing Plaintiff an opportunity to present his case and provide evidence in support of his defense. UDF 6-8. Defendant's evidence further establishes that Plaintiff admitted he refused to be rehoused, and that Plaintiff's explanation for the refusal — that Plaintiff feared he would contract COVID-19 — did not overcome the fact Plaintiff disobeyed the order to be rehoused. UDF 9-10. And that even after hearing from Plaintiff's witness Markeith Davis, the RVR determination remained unchanged. UDF 11-12, 17-19. Further, as concerns the joke made by Defendant to witness Davis, Defendant's evidence establishes the comment was made in jest to break the ice, was identified as a joke and understood by Davis to be a joke,[2] and that Plaintiff did not express any concern after Defendant made the joke to Davis. UDF 13-15. Finally, Defendant's evidence establishes that in Defendant's experience, because inmates are often tense when called to be a witness at a disciplinary hearing, and because that tension can harm and hinder the proceedings, telling a joke breaks the tension and encourages inmate witnesses to participate and answer questions truthfully. UDF 29.

Because Defendant has met his initial burden to show he acted reasonably to advance a legitimate correctional goal, the burden of production shifts to Plaintiff to establish that a genuine issue as to any material fact does exist. *Matsushita*, 475 U.S. at 586.

---

[2] Markeith Davis was deposed on September 9, 2024. Davis testified that Defendant's comment was made "jokingly" and "to lighten the air, just, you know, playing, joking." (Deposition of M. Davis, at 12; *see also id*. at 17 [Defendant was "joking. You know, just an open air, just let me know I'm a lieutenant"].) Davis also testified that Defendant's comment was "making jokingly" and that other inmates might have thought Defendant was joking because Defendant "was chuckling. He was laughing." (*Id*. at 13-14.) Davis "took it jokily" and "laughed it off." (*Id*. at 14, 17.)

18

1    Plaintiff's opposition fails to establish a material dispute concerning the fifth required

2    element of his retaliation claim. Other than making conclusory statements that Defendant "was a

3    high officer & knows the danger's of joke's in prison" and that "a major rule of the C.D.C.R is

4    'No Horseplay, Nor Horsetalk," Plaintiff offers no evidence in the form of affidavits or any other

5    admissible evidence to overcome Defendant's evidence that he was acting reasonably to advance

6    the legitimate correctional goal of conducting a disciplinary hearing in a manner that encouraged

7    witness participation.[3] *Nelson*, 83 F.3d at 1081-82. Moreover, federal courts must "'afford

8    appropriate deference and flexibility' to prison officials in the evaluation of proffered legitimate

9    penological reasons for conduct alleged to be retaliatory." *Pratt v. Rowland*, 65 F.3d 802, 807

10   (9th Cir. 1995) (quoting *Sandin v. Conner*, 515 U.S. 472, 482 (1995)).[4] The burden is on Plaintiff

11   to demonstrate "that there were no legitimate correctional purposes motivating the actions he

12   complains of." *Pratt*, 65 F.3d at 808. Plaintiff has failed to do so.

13   In sum, Plaintiff has not established a genuine need for trial nor a factual dispute requiring

14   resolution by a jury or judge. *Matsushita*, 475 U.S. at 587; *T.W. Elec. Serv.*, 809 F.2d at 631.

15   Plaintiff has failed to meet his burden on summary judgment. Therefore, Defendant is entitled to

16   summary judgment as concerns Plaintiff's First Amendment retaliation claim.

17           **B.    Defendant is Entitled to Summary Judgment on Plaintiff's Failure to
18                  Protect Claim**

19           <u>Deliberate Indifference: The Objective Component</u>

20   The objective component of an Eighth Amendment requires that a prisoner show he was

21   deprived of something "sufficiently serious." *Foster*, 554 F.3d at 812 (quoting *Farmer*, 511 U.S.

22   at 834). "'[S]peculative and generalized fears of harm at the hands of other prisoners do not rise

23   to a sufficiently substantial risk of serious harm.'" *Morgan v. Brown*, No. 1:17-cv-00425-LJO-

24

---

25   [3] The undersigned notes that Plaintiff testified at his deposition that he learned from other inmates after the hearing
26   that Defendant has made similar jokes "in his hearings" previously, but those jokes are usually directed to the inmate
     facing the discipline rather than to a witness appearing for another inmate. (*See* Deposition of Seymour, at 41.)

27   [4] Legitimate correctional goals include institutional safety (*Nev. Dept. of Corr. v. Greene*, 648 F.3d 1014, 1018 (9th
     Cir. 2011)), the provision of adequate medical care to inmates to maintain health (*Sepulveda v. Lee*, No. CV 10-1705-
28   CAS (PJW), 2014 WL 772819, at *3 (C.D. Cal. Feb. 19, 2014)), and maintaining the integrity of an investigation into
     serious institutional misconduct (*Bryant v. Cortez*, 536 F. Supp.2d 1160, 1169 (C.D. Cal. 2008)).

1  JLT, 2017 WL 4247970, at *3 (E.D. Cal. Sept. 22, 2017) (citing *Williams v. Wood*, 223 Fed.

2  Appx. 670, 671, 2007 WL 654223, at *1 (9th Cir. 2007)).

3      Defendant argues Plaintiff's initial allegation that Defendant "called him a 'snitch' in

4  front of other inmates, [] is simply not true." Rather, Defendant made a joke to inmate witness

5  Davis. UDF 13. Defendant maintains that even taking Plaintiff's allegations as true – that the joke

6  implied that Plaintiff told Defendant that Davis was selling phones – there is no evidence that

7  Plaintiff was attacked by other inmates because of Defendant's joke, and thus there was no harm

8  to Plaintiff. UDF 25, 31-32. Further, because Davis understood Defendant's comment to be a joke

9  meant "to break the ice," Plaintiff was not at risk from Davis. UDF 13-14, 16-18. Plaintiff's

10  grievance states that Plaintiff "received 'dirty looks' and a 'non-life-threatening letter,' and that

11  he knew 'the inmate population [was] on [his] side' and that he was 'OK.'" UDF 21-22.

12  Defendant argues "there was no risk of harm, let alone a substantial risk, because of the

13  disciplinary hearing." Next, Defendant's evidence indicates that Plaintiff stated in a subsequent

14  interview concerning the grievance that he did not have any safety concerns. UDF 23-26.

15  Defendant contends it "would be incongruent to hold that a substantial risk of harm existed"

16  where Plaintiff never believed such a risk existed. Defendant had no knowledge of any enemy or

17  safety concerns of Plaintiff, nor was Defendant aware of any information indicating Plaintiff's

18  safety was at issue. UDF 27-28, 30-32.

19      Because Defendant has met his initial burden to show Plaintiff cannot satisfy the objective

20  component of his failure to protect claim, the burden of production shifts to Plaintiff to establish

21  that a genuine issue as to any material fact does exist. *Matsushita*, 475 U.S. at 586.

22      During his deposition, Plaintiff testified that Defendant said to Davis, "hey, Seymour told

23  me you got cellphones for sale, you're selling cellphones on the prison yards." (Deposition of

24  Seymour, at 39.) Plaintiff further testified "[i]t was serious. It was not funny. I took it as he put

25  my life in danger." (*Id*., at 40.) While Plaintiff's deposition testimony includes references to

26  Defendant calling him a "snitch," in the context of the questions posed and the testimony offered,

27  Plaintiff did not testify Defendant used the word "snitch" when addressing Davis. Rather, the

28  words Defendant stated to Davis about selling cellphones were understood by Plaintiff to label

1    him a snitch. (*See, e.g.*, *id.* at 18, 41-42, 44, 48-49, 54, 56.)[5]

2        First, the undersigned finds, on these facts, any risk to Plaintiff was not obvious. *Farmer*,

3    511 U.S. at 842; *Lemire v. Cal. Dept. of Corrs. and Rehab.*, 726 F.3d 1062, 1078 (9th Cir. 2013).

4    Next, a prisoner may face a substantial risk of inmate attack either "for reasons personal to him or

5    because all prisoners in his situation face such a risk." *Farmer*, 511 U.S. at 843. The Ninth Circuit

6    recognizes a cognizable cause of action where correctional officers label inmates as snitches,

7    subjecting them to violence from other inmates. *See Valandingham v. Bojorquez*, 866 F.2d 1135,

8    1138 (9th Cir. 1989). But in *Valandingham*, the plaintiff submitted affidavits in support of his

9    claim that defendants called plaintiff a snitch and spread rumors that plaintiff snitched on staff. *Id.*

10   Here, the undisputed evidence reveals Defendant did not call Plaintiff a snitch nor did he spread

11   rumors that Plaintiff was a snitch. In opposition, Plaintiff does not allege Defendant used the

12   word "snitch" when speaking to Davis; he simply states Defendant's "tasteless joke" created "a

13   dangerous environment." (*See* Doc. 41 at 2.)

14       Further, Plaintiff testified that some inmates approached him after the disciplinary hearing

15   and asked him about Defendant's statements, but Plaintiff told those inmates about his other

16   lawsuit "to kind of get them off of [him]" and they accepted his explanation. (Deposition of

17   Seymour, at 43.) The inmates encouraged Plaintiff to file a grievance. (*Id.*, at 44, 47.)[6] After

18   Plaintiff filed the grievance, he was interviewed by a lieutenant about safety concerns. (*Id.* at 44-

19   45.) Plaintiff testified that did not update his "enemy concerns" during that interview. (*Id.* at 45.)

20   Plaintiff also testified that when inmates asked him about the grievance he filed, it made him

21   "uncomfortable, yes. Not unsafe, just uncomfortable." (*Id.*, at 48.)[7]

22       Even viewing the evidence in the light most favorable to Plaintiff, on this record, Plaintiff

23   fails to establish a genuine issue of material fact regarding any serious risk of substantial harm.

24   [5] Davis testified that Plaintiff told him that Defendant's comment "made him look like a snitch." (Deposition of
     Davis, at 17.)

25

26   [6] Plaintiff also testified that Davis told the other inmates that Plaintiff did not make any statement about Davis having
     phones for sale. (Deposition of Seymour, at 43, 46-47.) Davis testified that no one approached him about Defendant's
     comments following the disciplinary hearing and that he only spoke to Plaintiff about it. (Deposition of Davis, at 17.)

27

28   [7] Davis testified that Plaintiff did not tell him that he had any concerns about his safety and Davis did not know if
     Plaintiff feared for his safety. (Deposition of Davis, at 18 & 21.)

1    *See* Fed. R. Civ. P. 56(c); *Matsushita*, 475 U.S. at 586 n.11.[8]

2    <u>Deliberate Indifference: The Subjective Component</u>

3        The state of mind, or subjective, requirement concerns deliberate indifference to an

4    inmate's health and safety. *Farmer*, 511 U.S. at 834. To establish liability, a prisoner must show

5    the prison official knew of and disregarded an excessive risk to the prisoner's health or safety. *Id.*

6    at 837. Whether a prison official knew of a substantial risk "is a question of fact subject to

7    demonstration in the usual ways, including inference from circumstantial evidence, and a

8    factfinder may conclude that a prison official knew of a substantial risk from the very fact that the

9    risk was obvious." *Id.* at 842. The prison official need not "believe to a moral certainty that one

10   inmate intends to attack another at a given place at a time certain before [he] is obligated to take

11   steps to prevent such an assault." *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986). However,

12   before being required to act the prison official must have more than a "mere suspicion" that an

13   attack will occur. *Id.*

14       Defendant's undisputed evidence reveals he had no knowledge or information suggesting

15   that Plaintiff had enemy or safety concerns following the disciplinary hearing. UDF 27. And

16   witness Davis understood Defendant's comment to be a joke, and nothing occurred during the

17   hearing that made Defendant believe his joke or comments "raised a substantial risk of harm to

18   Plaintiff." UDF 14. Defendant was not aware Plaintiff filed a grievance, nor was he aware

19   Plaintiff participated in a confidential interview to discuss any safety concerns. UDF 17-18.

20   Defendant's evidence demonstrates Plaintiff never updated his enemy or safety concerns after the

21   disciplinary hearing, Plaintiff was never attacked "because of anything that happened at the

22   disciplinary hearing," and Defendant was never advised by Plaintiff or anyone else that Plaintiff

23   was concerned for his safety. UDF 24-32. Defendant maintains he did not, and could not, draw

24   any inference about any risk to Plaintiff's health or safety.

25       Because Defendant has met his initial burden to show Plaintiff cannot satisfy the

26   subjective component of his failure to protect claim, the burden of production shifts to Plaintiff to

27

28   [8] Stated another way, the mere fact the Court found that Plaintiff stated plausible claims following screening of
     his complaint does not amount to evidence upon which Plaintiff can rely in opposing summary judgment.

1    establish that a genuine issue as to any material fact does exist. *Matsushita*, 475 U.S. at 586.

2    As indicated above, Plaintiff has not proffered affidavits or other evidence to support his

3    allegations. *See* Fed. R. Civ. P. 56(c); *Matsushita*, 475 U.S. at 586 n.11. Further, Plaintiff's

4    opposition alone does not overcome Defendant's undisputed evidence. Merely stating that

5    Defendant "knows the danger's of joke's in prison" is insufficient to create a genuine dispute of

6    material fact that Defendant knew of and disregarded an excessive risk to the prisoner's health or

7    safety. Farmer, 511 U.S. at 838. Plaintiff has not established that Defendant had more than a

8    "mere suspicion" that an attack would occur. *Berg*, 794 F.2d at 459.

9    At most, Defendant's comment to Davis during the disciplinary hearing amounts to mere

10    negligence or gross negligence—neither of which arises to an Eighth Amendment violation.

11    *Farmer*, 511 U.S. at 835. Plaintiff offers nothing more than "metaphysical doubt" and this record,

12    taken as a whole, would not lead a rational trier of fact to find for Plaintiff. *Matsushita*, 475 U.S.

13    at 587. In sum, Plaintiff has failed to meet his burden on summary judgment. Therefore,

14    Defendant Ledbetter is entitled to summary judgment on Plaintiff's Eighth Amendment failure to

15    protect claim.[9]

16    **VIII.   CONCLUSION AND RECOMMENDATIONS**

17    Based on the foregoing, the undersigned **HEREBY RECOMMENDS** that:

18    1.   Defendant's motion for summary judgment (Doc. 36) be **GRANTED**; and

19    2.   The Clerk of the Court be directed to enter judgment in favor of Defendant Ledbetter

20         and to close this case.

21    These Findings and Recommendations will be submitted to the United States District

22    Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  **Within 14 days**

23    after being served with a copy of these Findings and Recommendations, a party may file written

24    objections with the Court. Local Rule 304(b). The document should be captioned, "Objections to

25    Magistrate Judge's Findings and Recommendations" and **shall not exceed 15 pages** without

26    leave of Court and good cause shown. The Court will not consider exhibits attached to the

27    _____

28    [9] Because the Court has found that Defendant is entitled to judgment on the merits, the Court does not reach
Defendant's alternative argument that he is entitled to qualified immunity.

1    Objections. To the extent a party wishes to refer to any exhibit(s), the party should reference the

2    exhibit in the record by its CM/ECF document and page number, when possible, or otherwise

3    reference the exhibit with specificity. Any pages filed in excess of the 15-page limitation may be

4    disregarded by the District Judge when reviewing these Findings and Recommendations under 28

5    U.S.C. § 636(b)(l)(C). A party's failure to file any objections within the specified time may result

6    in the waiver of certain rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

7    IT IS SO ORDERED.

8    Dated: __**June 26, 2025**__                    _____

9                                                        UNITED STATES MAGISTRATE JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28